# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONNIE L. FAMOUS,

   Plaintiff,

   v.              Case No. 07-C-847

WILLIAM POLLARD, MICHAEL BAENEN,
OFFICER HARTSTERN, JANE DOES, JOHN DOES,
TOM DOE, DAN DOE, MIKE DOE, GARY DOE,
KIRK DOE, BILL DOE, DOE STEVENS, and SGT. CYGAN,

   Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #172), DENYING PLAINTIFF'S MOTION FOR A PHYSICAL EXAMINATION (DOC. #201) AND DISMISSING CASE

Now before the court is the defendants' motion for summary judgment and the plaintiff's motion for a physical examination. The summary judgment motion was brought by the named defendants—William Pollard, Michael Baenen, Officer Hartstern, and Sgt. Cygan—who have been served with the amended complaint. Although the court advised the plaintiff that he would need to use discovery to identify the Doe defendants, the complaint has not been further amended to include them.

The plaintiff contends that he has not completed discovery, that he is waiting for answers or supplemental answers to several discovery requests and that the awaited discovery responses prevented identification of the Does, and amendment of the complaint. The Scheduling Order of May 9, 2008, provided that discovery be completed on or before August 11, 2008, and that dispositive motions be filed on or before September 10, 2008. In July 2008, the plaintiff filed a motion to extend those

deadlines, but the motion was denied on February 7, 2009. The Order noted that the court had reviewed the defendants' discovery responses and that they appeared to be complete. It is now far too late in the litigation for the plaintiff to conduct additional discovery or to add defendants.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, — F.3d —, 2011 WL 31855, at *3 (7th Cir. Jan. 6, 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTS[1]

### A. Parties

The plaintiff, Ronnie Famous, is a state prisoner who was housed at Green Bay Correctional Institution (GBCI) at all times relevant to this case. On January 27, 2010, he was transferred to the Wisconsin Resource Center for mental health evaluation, treatment, and services.

Defendant William Pollard is the Warden at GBCI, and defendant Michael Baenen is the Deputy Warden at GBCI. Defendant Jay Hartstern is a correctional officer at GBCI, and defendant James Cygan is a sergeant at GBCI.

### B. Contaminated Meals

According to the plaintiff, defendant Hartstern gave him unsanitary, contaminated meals from dirty laundry baskets on April 4, 2007, April 5, 2007, and on other dates while the plaintiff was on lock down in the north cell hall. The meals caused the plaintiff stomach pain, hunger pain, mental and emotional distress.

The plaintiff avers that his meals were contaminated when they were put into dirty laundry baskets containing blood, feces, urine, semen, bacteria and other disease producing germs. The plaintiff knows that the laundry carts contain those things

---

[1] The facts are taken from the sworn pleadings as well as the documents and exhibits attached thereto. The defendants want the court to strike the plaintiff's exhibits 1 through 71 because his declaration authenticating those documents was not authorized properly. However, the plaintiff's main declaration in opposition to the motion for summary judgment swears to the veracity of the other pleadings he filed in support of his opposition. Also, many of the documents are self-authenticating or properly sworn declarations. Therefore, the plaintiff's exhibits 1 through 71 will not be stricken.

3

because he used to work in the laundry as a sorter and saw those things inside the baskets while sorting laundry.

The plaintiff further avers that under certain circumstances trays are ordered by cell, for example, if an inmate in a certain cell needs a certain type of diet. There is no such thing as a blind feeding method used for meals tray service. The staff controls the food and knows which inmates are in every cell.

When the lock down started in February 2007, only staff handed out the food and all inmates were confined in their cells. Even after Pollard allowed some inmates out of their cells to help with the food, Hartstern made most of the deliveries.

Once, Hartstern allowed the plaintiff to choose a different meal tray when the plaintiff complained. However, the only other trays to choose from were in the contaminated laundry carts.

The food service manual indicates that appropriate equipment should be used for transporting hot foods or cold foods, and that containers should be cleaned and sanitized after each use. The manuals also state that carts used in transporting food should be cleaned daily. Nevertheless, the laundry carts are never cleaned and sanitized.

**C. Failure to Investigate and/or Act**

The plaintiff told defendants Baenen and Pollard about the contaminated food, but they did nothing to stop Hartstern and the others from giving him contaminated food. Nor did they stop the Doe defendants from retaliating against the plaintiff by tampering with the plaintiff's toothpaste.

4

While Pollard was walking through the prison the plaintiff informed him of the contaminated meals. Another time, while he was working in the kitchen he told Pollard of toothpaste tampering. The plaintiff also filed inmate complaints regarding the incidents and wrote letters to Baenen and Pollard.

Sgt. Cygan would listen to the plaintiff's complaints, but the plaintiff denies that Sgt. Cygan offered him different trays of food. Plaintiff avers that Sgt. Cygan also failed to stop subordinate officers from serving him from the contaminated laundry carts.

Other declarations concerning Sgt. Cygan focus on complaints about a mattress and allowing a plumber to fix the sink in the plaintiff's cell. However, they do not relate to the claims at issue in this case. Additional facts are incorporated in the discussion below.

## DISCUSSION

The defendants argue that they are entitled to summary judgment on each of the plaintiff's claims. At screening, the plaintiff was allowed to proceed on the following claims: (1) an Eighth Amendment claim against defendant Hartstern and Doe defendants that he was served unsanitary or contaminated meals; (2) an Eighth Amendment claim that Doe defendants placed harmful substances in his personal effects; (3) a retaliation claim against defendant Hartstern and Doe defendants that his toothpaste was tampered with and that he received unsanitary meals after filing an offender complaint; (4) a claim regarding excessive searches against defendant Pollard and Doe Defendants; (5) a claim against defendants Doe Stevens, Cygan, Baenen, and Pollard for failure to investigate or stop unconstitutional actions; and (6) a state law negligence claim against defendant Pollard.

In response to the defendants' summary judgment motion, the plaintiff concedes that he failed to provide the proper notice of injury and claim with regard to his state law negligence claim against Pollard. He also concedes his excessive searches claim against Pollard.

Inasmuch as the toothpaste tampering claim names only Doe defendants who have not be identified, this claim must be dismissed for lack of prosecution. Thus, what remain are the Eighth Amendment and retaliation claims against Hartstern regarding the contaminated meals and the failure to investigate or stop unconstitutional actions claims against defendants Cygan, Baenen and Pollard.[2]

**A. Contaminated Meals**

The plaintiff asserts that Hartstern served him cross-contaminated food and used the wrong kind of equipment for transporting the food. Hartstern maintains that he is entitled to summary judgment on this claim because he was not deliberately indifferent to the plaintiff's conditions of confinement.

Under the Eighth Amendment, a prisoner's diet must provide adequate nutrition. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)). However, "prison officials cannot be held liable under the Eighth Amendment unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." *Mays*, 575 F.3d at 648.

---

[2] The plaintiff named in this claim a defendant Doe Stevens. However, he never identified the specific Stevens employed at GBCI against whom he was making his claim. Defendant Doe Stevens was never served with the plaintiff's Amended Complaint and will be dismissed along with the other Doe defendants.

The plaintiff submits that delivering meal trays out of laundry carts that are also used for dirty laundry creates an objectively serious risk of harm. He also contends that the meals he received were contaminated and caused him stomach pain when he ate them, hunger pain when he did not eat them, and mental and emotional distress.

Despite the plaintiff's claims of severe stomach pain, the plaintiff's medical records indicated that he did not seek and receive medical treatment at all during the relevant time frame, from the beginning of the lock down in February 2007 until he filed his complaint in September 2007. The only medical progress note for the relevant period relates to August 30, 2007, when the plaintiff refused an evaluation by a physician and, as a result, his medications expired without renewal.

Subsequently, the plaintiff refused a blood pressure and weight check on November 15, 2007. The plaintiff's progress notes indicate that the only time he was treated by a medical professional was on December 7, 2007, almost three months after he filed this action. At that time, the plaintiff complained of someone putting chemicals in his food thereby making him sick. The nurse observed that the plaintiff appeared paranoid about everything and instructed the plaintiff to write food services and security if he has issues with meals or people going into his cell. She also instructed the plaintiff to write to the psychological services unit about his paranoid thinking. At the same appointment, the plaintiff complained of a rash on his neck, and was given an antifungal medicine.

When the plaintiff was next seen, on January 2, 2008, he still had the rash on his neck. He also reported that there was stuff coming out of the vents in his cell that

burns if you touch it. At this appointment, he said the food was not the problem anymore.

Had the plaintiff been experiencing ongoing, objectively serious symptoms related to the food he was consuming, it can be inferred that in the Spring of 2007, he would have been seen by medical personnel. However, the plaintiff does not assert that at any time he asked for medical treatment and did not receive it. Thus, it appears he only mentioned stomach pain during one medical appointment in 2007, after he filed this case, and his stomach pain was not the primary focus at that time.

The plaintiff did test positive for a bacterial stomach infection two years later, on December 4, 2009, which could explain some of the plaintiff's stomach complaints. He was given an antibiotic to treat the infection. It is not possible from the record in this case to determine when this infection started or what caused it.

The use of the same laundry carts to deliver covered food trays and to collect dirty laundry is a disturbing practice, especially if the carts were not cleaned between uses. It also may be contrary to a policy set forth in the prison's food service manual. Yet it does not rise to the level of deliberate indifference to the plaintiff's legitimate personal needs especially where there is no objective evidence that the meal trays were contaminated by anything in the laundry carts. Even if there was residue in the laundry carts from contaminants such as blood, urine, or feces, it does not automatically follow that such residue contaminated food contained in covered trays.

**B. Retaliation**

It appears that a significant portion of the plaintiff's retaliation claim relates to the tampering with his toothpaste by Doe defendants. Because that part of the claim

8

is no longer part of the case, the court will only consider whether Hartstern's service of contaminated meals to the plaintiff was in retaliation for the plaintiff filing an offender complaint about the contaminated meals.

To establish a prima facie case of retaliation, a prisoner must show that a protected activity was "at least a motivating factor" in retaliatory action taken against him. *Mays*, 575 F.3d at 650 (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). "The burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays*, 575 F.3d at 650.

The plaintiff's unit at GBCI was on lock down beginning in February 2007 through at least April 2007. During that time, it appears that Hartstern and others used laundry carts to deliver meal trays to all of the prisoners in the unit. Their practice did not change after the plaintiff filed an offender complaint regarding the delivery of allegedly contaminated meals. Thus, there is no evidence of any change in behavior by Hartstern following the plaintiff's offender complaint, let alone a retaliatory animus for a change in behavior.

## C. Failure to Investigate and/or Act

The plaintiff asserts that defendants Cygan, Baenen, and Pollard all had knowledge of the delivery of allegedly contaminated meals to the plaintiff and did nothing to stop it. The defendants argue that they are entitled to summary judgment on these claims because there can be no *respondeat superior* claims under § 1983 and because there is no evidence of deliberate indifference by the defendants to the plaintiff's complaints. The plaintiff has submitted evidence, in his affidavit and letters

9

attached as exhibits, indicating that he made each of the defendants aware of the situation regarding his food.

"To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 [7th Cir. 1995]). An official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" to be personally responsible. *Id.* The Seventh Circuit has held that "'[a] prison official's knowledge of prison conditions learned from an inmate's communication can . . . require the officer to exercise his authority and to take the needed action to investigate, and if necessary, to rectify the offending condition.'" *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (quoting *Vance v. Peters*, 97 F.3d 987, 993 [7th Cir. 1996]).

First, with regard to defendant Sgt. Cygan, the plaintiff acknowledges that Sgt. Cygan listened to his complaints, but denies that Sgt. Cygan offered him different trays of food. Sgt. Cygan also failed to stop subordinate officers from serving the plaintiff from the contaminated laundry carts. For the same reasons that Hartstern was not deliberately indifferent, the plaintiff cannot succeed on his claim against Sgt. Cygan.

Second, while there is evidence that the plaintiff made Warden Pollard aware of the food contamination issue, there likewise is evidence that Pollard designated the investigation of the situation to Deputy Warden Baenen. Pollard was justified in doing so.

Third, defendant Baenen's personal involvement was twofold. He dealt with the plaintiff's inmate complaints as the reviewing authority at GBCI, and had personal knowledge of the plaintiff's complaint.

In *Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009), the Seventh Circuit affirmed the dismissal of inmate complaint examiner for her role in rejecting the prisoner's untimely grievance.

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules ... along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to the bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

*Burks*, 555 F.3d at 595. Thus, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). "One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable." *Burks*, 555 F.3d at 595) (citations omitted).

The plaintiff contends that Baenen did nothing to investigate the plaintiff's complaints. However, Baenen has provided evidence that he investigated the plaintiff's

11

claims sufficiently to clinical and security staff and delegated responsibility for addressing those concerns. Moreover, Baenen was not the inmate complaint examiner (ICE) assigned to initially investigate the plaintiff's complaint. He was the reviewing authority for GBCI.

Wisconsin Administrative Code DOC 310.12 details the duties of the reviewing authority. Within receipt of a recommendation from an ICE, the reviewing authority has 10 working days to decide whether to dismiss the complaint, dismiss the complaint with modifications, affirm the complaint, affirm the complaint with modifications, or return the complaint to the ICE for further investigation. Wis. Admin. Code § DOC 310.12(1) and (2). It is not the statutory duty of the reviewing authority to investigate offender complaints independently.

**D. Plaintiff's Motion for Physical Examination**

Finally, the court turns to the plaintiff's motion for a physical examination under Federal Rule of Civil Procedure 35(a), filed on February 28, 2011. The plaintiff asserts that his mental and physical condition is at issue in this case and asks the court to order that he be seen by a medical doctor who is not affiliated with GBCI or the WRC. Alternatively, he asks to be examined by his niece's doctor.

In response, the defendants direct the court to the pleadings on file showing that the plaintiff suffers from a delusional thought disorder for which he refuses treatment. The defendants argue that the plaintiff cannot be considered a credible witness or accurate reporter and that there is no reasonable basis for the court to order additional medical testing. They maintain there is a total lack of evidence to support testing as proposed.

Due to the resolution of the defendants' motion for summary judgment, the plaintiff has no remaining claims and there is no basis for the court to order defendant to conduct a physical examination. Therefore,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #172) is GRANTED.

IT IS FURTHER ORDERED that the following individuals are DISMISSED WITH PREJUDICE as parties to this action: Jane Does, John Does, Tom Doe, Dan Doe, Mike Doe, Gary Doe, Kirk Doe, Bill Doe, and Doe Stevens.

IT IS FURTHER ORDERED that the plaintiff's motion for a physical examination (Docket #201) is DENIED.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge